702 So.2d 323 (1997)
James R. TOWNLEY, Jr., Plaintiff-Appellant,
v.
CITY OF IOWA, Defendant-Appellee.
No. 97-493.
Court of Appeal of Louisiana, Third Circuit.
October 29, 1997.
*324 James R. Townley, for James R. Townley Jr.
Lisa Mayer, Lafayette, for City of Iowa.
Before WOODARD, SULLIVAN and PICKETT, JJ.
PICKETT, Judge.
This is an appeal from a summary judgment in favor of the City of Iowa, Louisiana.
The cause of this litigation stems from an accident in which James R. Townley, Sr. died after exiting his vehicle and being struck by another vehicle. The deceased's children, James R. Townley, Jr. and Judith Daigle, separately filed wrongful death actions against the City of Iowa alleging negligence of its police officers, Officer Clint Joseph Fontenot and Officer Santos Delgado. Officer Fontenot first arrived at Club 90 at approximately 10:00 p.m. in response to a complaint of a man in the parking lot. There *325 he found an unconscious man who was later identified as the decedent. According to Officer Fontenot's affidavit, he attempted to find the unconscious man's identification. At that time, Officer Delgado arrived and told Officer Fontenot to finish his rounds, as he would take care of this matter. Unable to obtain an identity of the decedent, Officer Delgado entered Club 90 to ask if anyone knew the subject or could take him home. During the investigation, the decedent absconded from the scene.
Around 1:00 a.m., a Louisiana State Trooper responded to a call placed by Daniel J. Ardion, Jr. At this scene it was discovered that James R. Townley, Sr. ran his vehicle off Highway 90 and into Mr. Ardion's yard located outside of the City of Iowa. The decedent then exited the vehicle, attempted to cross the highway and was struck by vehicle driven by Rayford L. Racca. The decedent died from multiple injuries sustained from the impact. The lab results reveal that the decedent's blood alcohol level registered 0.130 grams percent ethyl alcohol per one hundred cubic centimeters.
Two issues have been raised on appeal in connection with the trial court's granting defendant's motion for summary judgment. The first, plaintiffs contend that the trial court erred in hearing the motion for summary judgment when plaintiffs had not the opportunity to complete discovery. The second, the trial court erred in granting the motion for summary judgment.
While parties must be given fair opportunity to carry out discovery and present their claim, there is no absolute right to delay action on motion for summary judgment until discovery is complete. Trahan v. State Through Dept. of Health and Hospitals, 95-320 (La.App. 3 Cir. 10/4/95), 663 So.2d 242; Guillory v. Dr. X, 96-85 (La.App. 3 Cir. 8/28/96), 679 So.2d 1004. In the present case, both plaintiffs filed their suits in October of 1988. The motion for summary judgment was filed in August of 1996 and was heard in December of that year. Plaintiffs had eight years to complete discovery. In view of length of time between initial filing of suit and granting of summary judgment, plaintiffs had ample time to gather some evidence to support allegations in their petitions. Appellant's argument is without merit.
Appellate courts review summary judgments de novo applying the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Ponthier v. Brown's Mfg., Inc., 95-1606 (La.App. 3 Cir. 4/3/96), 671 So.2d 1253. There are basically two steps in deciding whether to grant a summary judgment. First, the mover for summary judgment has the burden of affirmatively showing the absence of a genuine issue of material fact through the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any. Liem v. Austin Power, Inc., 569 So.2d 601 (La.App. 2 Cir.1990). A genuine issue is a triable issue. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730. A material fact is one whose existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery, i.e., one that would matter on a trial of the merits. Second, after it has been established that there are no genuine issues of material fact, a summary judgment should only be granted if mover is entitled to judgment as a matter of law. La.Code Civ.P art. 966.
Act 9 of the 1996 Special Session amended Article 966 by adding:
A. (2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
Article 966 was also amended in the Act.
C. After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted against an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial.
*326 In Dinger v. Shea, 96-448 (La.App. 3 Cir. 12/11/96), 685 So.2d 485 this court has previously commented on the amendment, as follows:
In other words, pursuant to the statute, summary judgment is now favored and should be applied liberally.
In the past, any doubt regarding the existence of material facts was to be resolved against granting the summary judgment, even if grave doubts existed as to a party's ability to establish disputed facts at trial. Penton [v. Clarkson, 93-657, p. 5 (La.App. 1 Cir. 3/11/94)], 633 So.2d 918 (citations omitted). The amendment does not change the law regarding burdens of proof, as the mover is still required to prove the absence of a genuine issue and his entitlement to judgment. Short v. Griffin[Giffin], 96-0361 (La.App. 4 Cir. 8/21/96); 682 So.2d 249; Walker v. Kroop, 96-0618 (La.App. 4 Cir. 7/24/96); 678 So.2d 580. However, it now appears, based on the new language of section (C), that in order to rebut a showing made by the mover of the non-existence of a genuine issue of material fact, the nonmoving party will be held to a higher standard of proof, i.e. a non-moving party must sufficiently establish the existence of proof of an essential element of his claim on which he is to bear the burden of proving at trial.
In the case sub judice, the plaintiffs alleged the following acts of negligence in their petitions.
1. Failing to arrest an obviously intoxicated person who could not take care of himself.
2. Putting an obviously intoxicated person into a vehicle and instructing him to drive when the offices knew or should have known that said person was incapable of driving and could seriously injure himself or others.
3. Allowing an obviously intoxicated person to drive.
4. Failing to bring an obviously intoxicated person to safety.
5. Any and all other negligent acts which may be proven at the trial of this matter.
At the hearing for the summary judgment, the defendant offered in support the affidavits of the responding officers recounting the events as stated above. On the other hand, plaintiffs offered no evidence in opposition, let alone in support of the contention that the officers actually assisted the decedent into the vehicle and instructed him to drive. An adverse party to a supported summary judgment may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue of material fact for trial. La.Code Civ.P. art. 967. We agree with the trial court that the defendant carried its burden of proof that there is no genuine issue of material fact, in light of the plaintiff's silence.
After a showing that no material issue of genuine facts exists, we next must determine whether the mover is entitled to a judgment as a matter of law. La.Code Civ.P. art. 966. In order to prevail in Louisiana in a negligence action under a duty-risk analysis, the plaintiff must prove: (1) the conduct in question was a substantial factor in bringing about the harm to the plaintiff; (2) the defendant owed a duty to the plaintiff; (3) that duty was breached; (4) the risk and harm caused was within the scope of protection afforded by the duty breached. Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94), 646 So.2d 318.
Louisiana appellate courts have continued to apply the "public duty" doctrine in analyzing the conduct of law enforcement officers. Moore v. Esponge, 94-1192 (La. App. 3 Cir. 3/8/95), 651 So.2d 962, writ denied, 95-0907 (La.5/19/95), 654 So.2d 696. This doctrine was explained by this Court in Moore, 651 So.2d at 966.
A police officer's duty to make arrests is owed to the general public and not to individuals. Fusilier v. Russell, 345 So.2d 543 (La.App. 3 Cir.), writ denied, 347 So.2d 261 (La.1977). Under the public duty doctrine, a governmental agency is freed from liability for an otherwise actionable offense if the offense is a breach of a duty owed to the general public; conversely, the agency is not freed from liability if the duty is *327 owed to a particular class of individuals. Guidry [v. Airport Authority for Airport District No. 1 of Calcasieu Parish, 558 So.2d 300 (La.App. 3 Cir. 1990)], supra. A duty owed to the public in general may be transformed into a duty owed to an individual through closeness or proximity in time. Kendrick v. City of Lake Charles, 500 So.2d 866 (La.App. 1 Cir.1986). The existence of a duty and the scope of liability resulting from a breach of that duty must be decided according to the facts and circumstances of the particular case.
In Moore, a Cameron Parish Sheriff's Deputy pulled over a vehicle for crossing the center line. After determining the individuals in the car were intoxicated, the deputy instructed them to use the pay phone a short distance away and have someone pick them up. Five hours later one of the individuals, while driving allegedly intoxicated, crossed the center line and collided with the plaintiff. The court refused to extend the public duty to arrest the individual for driving while intoxicated to the plaintiff's injuries considering the time between incidents and the fact the individuals heeded the deputies warning not to drive from the earlier incident.
In Fusilier, the plaintiff suffered injuries when the vehicle in which he was a passenger was struck by a intoxicated driver. Moments prior to the accident, two deputies observed the intoxicated person in a parking lot, yet failed to arrest him. The duty to arrest was owed only to the general public and not to the individual in that case, especially when the officers did not see the individual get into or knew that he owned an automobile.
In Kendrick, the general duty to the public was transformed into a duty owed to the individual. In that case the decedent was arrested for driving while intoxicated. Still intoxicated, she posted bond and was allowed access to her vehicle. Decedent drove head-on into a parked vehicle two hours later. The court determined a one-on-one relationship between the police and the arrestee had developed. Once that occurred, the police then had the special duty to protect her from harm.
Police owe no duty to intoxicated bar patrons to arrest or take them home in order to prevent them from driving. Persilver v. Louisiana Dept. of Transp., 592 So.2d 1344 (La.App. 1 Cir.1991). In Persilver, two city police officers came upon the plaintiff intoxicated at the Drink Factor, after receiving a complaint by the manager. In lieu of arresting plaintiff, the police instructed plaintiff to hand over his car keys to his friend. Shortly after the officers left the scene, plaintiff regained his keys, proceeded to operate his vehicle and suffer severe injuries as a result of an accident. The first circuit in determining the existence and scope of the officers duties considered "a broad range of social, economic, and moral factors including the cost to the defendant of avoiding the risk and the social utility of the plaintiff's conduct at the time of the accident." Persilver at 1350; quoting Oster v. Department of Transportation and Development, State of Louisiana, 582 So.2d 1285 (La.1991). Taking an intoxicated person home was found to be too burdensome on police departments and detract from their primary role of preventing crime and catching criminals. The harm of the individual later driving and becoming involved in an accident was found not to be within the scope of arresting the individual, as the purpose of arrest is to assure presence at trial, not to prevent harm to the arrestee. While the police do owe a general duty to prevent the crime of driving while intoxicated, the first circuit refused to extend this protection to the perpetrator from himself.
In the case sub judice, the officers came upon the decedent unconscious. They were unable to find any driver's license or identity on the individual. Officer Delgado's affidavit indicates Robert Pitre, a passer-by, told the officer that he never knew the man to have a driver's license or a car. While the officer was attempting to find the identity of the decedent or someone take him home, Mr. Townley fled the scene. The officers presumably had no knowledge Mr. Townley owned a vehicle and could not have known he would suddenly regain consciousness, drive away and be involved in an accident hours later.
*328 Under the facts of this case, plaintiff has not shown a special duty, through closeness in proximity or time, was owed by the police officers of the City of Iowa to the decedent. A one-to-one relationship has not been shown to have developed as between jailer and arrestee as in Kendrick. Holding otherwise would result in municipalities becoming the personal insurers of persons who choose to become intoxicated and violate the law.
Accordingly, as no genuine issue of material fact exists and no duty was owed to the decedent, movers are entitled to a judgment as a matter of law. The trial court correctly granted defendant's motion for summary judgment. Costs of this appeal are assessed to plaintiff-appellants.
AFFIRMED.
WOODARD, J., concurs in the result.