WILLIAMS, J.,
dissents.
I respectfully dissent.
The Northeast Louisiana Marine Institute, Inc. (“the Institute”) is an alternative school facility that accepts students with disciplinary problems from various public school districts. A judge ad hoc was assigned to this case after the recusal of District Judges Crigler and Lancaster, who were both members of the Institute’s advisory board.
A school, through its agents and teachers, owes a duty of reasonable supervision over students. LSA-C.C. art. 2820. The supervision required is reasonable competent supervision appropriate to the age of *1138 the students and the circumstances. This duty does not make the school the insurer of the safety of the children. Coutee v. Glade Middle School, 03-128 (La.App. 5th Cir.6/3/03), 848 So.2d 754. To prove a prima facie case, a plaintiff must present competent evidence that persuades the trial court that he would probably prevail at a trial on the merits. Hickman, supra.
In the present case, Robert testified that at the time of the altercation, he was in the cafeteria eating breakfast with the other students when Smith began cussing at him loudly enough for others in the cafeteria to hear. Robert stated that Smith was yelling at him for approximately 25 seconds before punching him in the face. Robert testified that Smith then yelled something else, punched him in the face a second time and ran away from the scene. Robert stated that during the altercation, there was no guard nearby, but there were male teachers close enough to hear Smith yelling.
Contrary to the majority’s assertion, the testimony does not show that the Institute staff responded “immediately.” Robert testified that only after he was punched the second time did one male teacher approach to assist him. After the altercation had occurred, a guard came out of another room and responded by telling Robert to wash the blood out of his mouth. Robert estimated that the altercation lasted approximately one minute and 25 seconds from the time Smith began yelling until the second punch. Robert stated that his jaw looked broken and an Institute employee transported him to the emergency room at Madison Parish Hospital, where he was examined and diagnosed with a fractured jaw. Robert was transferred to LSU Health Sciences Center for surgery to have his jaw wired shut.
The evidence in the record shows that the Institute, in accepting students from the public schools, owed a duty to provide reasonable supervision appropriate to the age and circumstances of the students. The testimony demonstrated that at the time of the altercation, a guard was not present in the cafeteria and the instructors who were present did not respond when Smith began yelling at Robert in a loud voice, an indication of conflict. Given the circumstances at the Institute, where students with discipline problems were gathered together, the trial court could reasonably have found that the guard’s absence from the room, along with the teachers’ failure to respond before a punch was thrown, constituted a breach of the Institute’s duty to adequately supervise the students.
In light of the Institute’s function to provide an alternative program for students with known behavioral problems, this was not the typical school setting, but was a potentially volatile situation. As a result, the risk that student aggression would cause this type of injury was reasonably foreseeable to the Institute’s staff. In addition, the record supports a finding that there was a causal connection between the inadequate supervision and Robert’s injury, because Smith likely would not have hit Robert if a guard had been present in the cafeteria, or if the teachers nearby had been more attentive to potential problems, as would be expected in this type of facility.
At the hearing, the testimony established that Institute personnel failed to respond to the altercation before the escalation to physical violence, that no one responded after Robert was punched the first time and that there was no response until he was punched again and Smith had time to run away from the scene. Smith’s loud cursing, not for a few seconds but for one-half minute, gave Institute personnel a warning of trouble that was not heeded. Thus, the evidence indicates that the inju *1139 ry could have been prevented with adequate supervision.
The trial court heard the evidence and was convinced that the plaintiffs would probably prevail at trial. The majority has simply substituted its assessment of the evidence for that of the fact finder. Based upon this record, I cannot say the trial court was incorrect in determining that the plaintiffs presented sufficient evidence to establish a prima facie case that the Institute was negligent in supervising the students and this negligence was a cause of plaintiffs’ injuries. Thus, I would affirm the trial court’s judgment finding the Institute liable for plaintiffs’ damages.
In any action for damages where a person suffers injury, the percentage of fault of all 'persons causing or contributing to the injury shall be determined, regardless of whether the person is a party to the action or a nonparty and whether the other person’s identity is not known. LSA-C.C. art. 2323. In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including whether the conduct resulted from inadvertence, the degree of risk created by the conduct, the capacities of the actor and any extenuating circumstances. Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967 (La.1985); Brothers v. Direct General Insurance Co. of Louisiana, 08-1455 (La.App. 3rd Cir.5/6/09), 11 So.3d 1154.
In the present ease, since the trial court failed to assess fault as required pursuant to Article 2323, I would make an independent review of the record to allocate fault between the Institute and Smith. See Landry v. Bellanger, 02-1443 (La.5/20/03), 851 So.2d 943. Although Robert was injured by Smith’s intentional act, the Institute’s negligent conduct contributed to the risk of injury and the Institute was in a superior position to provide a safe environment for the students under its supervision. In addition, there were extenuating circumstances in that the Institute’s staff should have possessed a heightened awareness of potential conflicts between students, who were assigned to the Institute’s facility because of their prior behavior problems. After considering the relevant factors, I would amend the judgment to assess the Institute with 40% of the fault in causing the plaintiffs’ injuries and Tyson Smith with 60% of the fault.